### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION


**ANDREA WALKER,**

      **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　**CASE NO. 1:05CV02-SPM/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

      **Defendant.**

_____/


### <u>REPORT AND RECOMMENDATION</u>

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.      PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on April 10, 2001, alleging a disability onset

date of February 4, 2003, because of a left knee injury with surgery, osteoporosis,

diabetes and high blood pressure.  Plaintiff petitioned for a hearing before an

administrative law judge (ALJ), who conducted a hearing on July 23, 2003, and entered

an unfavorable decision on October 3, 2003.  The Appeals Council denied Plaintiff's

request for review, thus making the decision of the ALJ the final decision of the

Commissioner.  This action followed.

**B.      FINDINGS OF THE ALJ**

The ALJ found that Plaintiff has a left knee injury, osteoporosis, diabetes, and

high blood pressure, and these impairments are severe within the meaning of the Act,

but do not meet the Listings of Impairments.  (R. 14).  Both Drs. Blake and DePaz found

her capable of sedentary work and the ALJ found that based upon the record and their

opinions Plaintiff could lift up to 10 pounds; stand and/or walk 2 to 4 hours out of an 8

hour day; and sit at least six hours out of an 8 hour day.  (R. 17).  Plaintiff testified that

her past relevant work required that she walk only a small amount of her day, and the

rest of job requirements were from a sitting position.  The vocational expert testified that

based on her description and the DOT description for staffing coordinator, the job was

sedentary in nature and not precluded by her limitations.  Thus, the ALJ found that she

could perform her past relevant work and was not disabled.

**C.      ISSUES PRESENTED**

Plaintiff argues that substantial evidence did not support the ALJ's decision that

she could perform her past relevant work as a staff coordinator, specifically the ALJ

should not have relied upon the VE to make this Step Four determination; that the ALJ failed to explain why he found her testimony about pain not credible; and the ALJ did not fully develop the record after Plaintiff advised him at the hearing that a February 2003 MRI indicated the need for additional surgery. Plaintiff asserts that the ALJ should have ordered a consultative examination.

The Commissioner responds that the regulations specifically allow the ALJ to utilize the services of a vocational expert in making his Step Four determination, citing 20 CFR §404.1560(b)(2). Further, the Eleventh Circuit has rejected Plaintiff argument to the contrary. See Hennes v. Commissioner, 130 Fed Appx. 343 (11th Cir. 2005). Also, the Dictionary of Occupational Titles (DOT) lists Plaintiff's past work as a staffing coordinator as sedentary work and within Plaintiff's residual functional capacity.

The Commissioner also argues that two of Plaintiff's physicians opined that she could perform sedentary work, which was inconsistent with her allegations of complete inability to work. Thus, there was support for the ALJ's credibility determination that her allegations were not credible. The ALJ also noted that Plaintiff worked for two years after her knee surgery, and despite her contention that her knee problems were exacerbated by a fall in February 2003, she did not seek treatment after this fall, such that it must not have been as serious as she alleges.

Further, the Commissioner contends that Plaintiff is responsible for proving her disability. The latest medical records were from June 2003. The ALJ left the record open for Plaintiff to submit additional records, but she did not.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.    STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v.

<u>Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  <u>Id.</u> (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.     Is the individual currently engaged in substantial gainful activity?

2.     Does the individual have any severe impairment?

3.     Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.     Does the individual have any impairments which prevent past relevant work?

5.     Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps

him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.    SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

According to Plaintiff's pain questionnaire, she has pain shooting up and down her leg every day, unrelieved by pain medication, which prevents her from any activity requiring prolonged standing.  (R. 85-87).  She also says that her doctor told her that her osteoporosis is producing the pain.  (R. 87).

Plaintiff injured her knee in November 1996 while lifting a patient.  (R. 115).  Dr. Blake treated her and obtained a MRI which revealed a tear.  (R. 115).  An arthroscopy was performed, and she was told to ice her knee and refrain from weight bearing activities for one month before she was released to regular work duties on February 10, 1997.  (R. 116-117).  On May 21, 1997, she was considered to have reached maximum medical improvement with no restrictions.  (R. 117).

She was again referred to Dr. Blake on January 10, 2001, by Dr. DePaz for a possible re-tear of her left knee.  (R. 118).  Dr. Blake explained to her that a MRI of a previously operated on knee was unreliable and she may not have a tear, but that arthroscopy would be definitive.  (R. 113).  The arthroscopy revealed a tear, which was resected, and she was referred to physical therapy.  (R. 114).  On May 21, 2001, she was released to work at a "predominately sedentary job."  (R. 120).  On July 2, 2001, Dr. Blake found her knee to be tolerant of sedentary work with a 4% permanent impairment rating.  (R. 139).

Records from Dr. DePaz include an MRI dated September 18, 2000, which shows a re-tear of the posterior horn remnant and evidence of Grade III to early Grade IV chondromalacia in the patella femoral compartment.  (R. 109).  Dr. DePaz wrote a prescription to avoid prolonged weight bearing, squatting or crawling dated November 28, 2000.  (R. 107).  An Activity Level Estimation prepared on this date indicates that the only restrictions were no squatting or crawling and only occasional climbing.  (R. 108).

After arthroscopy by Dr. Blake, she returned to Dr. DePaz for follow up treatment and he found her to be improved with medication.  (R. 142-145).  She told him she was working full time as a receptionist at this time October 2, 2001.  (R. 142).  Later treatment notes show that she was able to work with pain medication until April 2002, when she complained of continued pain interfering with work in the afternoon when the Oxycontin wears off.  (R. 163).  Additional medications were prescribed in May 2002, (R. 161-162), and the pain worsened until a fall in February 2003, for which a new MRI

was obtained.  (R. 158).  MRI showed possible retear and osteoarthritis.  (R. 187).

[Plaintiff's onset date is February 2003].  On June 20, 2003, she was given an excuse

for being off work until after a surgical consultation with Dr. Blake.  (R. 189). [There are

no records of the results of this consultation or whether she had surgery].

Dr. Michael Huey has treated Plaintiff for her high blood pressure and diabetes.

(R. 121-131, 140-141).  Both her diabetes and high blood pressure were not well

controlled, but Dr. Huey counseled her on not smoking and proper eating habits, which

were contributory factors.  His last treatment note of September 2001, found her blood

pressure to be only slightly elevated, her weight was starting to come down, her

smoking had decreased, but her diabetes was still uncontrolled.  (R. 140-141).

A Physical Residual Functional Capacity form completed on August 11, 2001,

assessed her as capable of lifting 20 pounds, 10 pound frequently; sitting six hours,

standing or walking six hours, with several postural limitations because of her knee.  (R.

132-138).  A later assessment on November 14, 2001, found her capable of more

postural maneuvers with improved function.  (R. 147-154).

## F.   SUMMARY OF THE ADMINISTRATIVE HEARING (JULY 23, 2003)

Plaintiff was 39 years old at the time of the hearing with one year of college and a

CNA license in medical terminology.  (R. 198).  She described her last job as a staff

coordinator as a "sit down" job, but she could walk around for awhile also.  (R. 200).

She did not have to lift much, only paper.  (R. 200).  The job she had before that, as a

receptionist, was also a sit down job that required no lifting or bending.  (R. 202-203).

Plaintiff describes her primary problem as her left knee, which is painful.  (R. 206).  She

takes Oxycontin and Oxycodone for the pain and is preparing to have a third surgery. (R. 207).  The pain is exacerbated by walking.  (R. 206).  She can walk "from here probably to the car and I feel some kind of pain," which she says is about 50 yards.  (R. 207, 210).  She can stand about 45 minutes favoring one leg.  (R. 210).  She says she cannot sit for more than 15 to 20 minutes before she will have to stand up and walk around.  (R. 210-211).  She cannot bend or squat.  (R. 211).  She is also a diabetic with high blood pressure for which she takes medication.  (R. 208-209).  She testified that her diabetes is under control with diet, but her high blood pressure is not controlled and causes headaches.  (R. 209).  Plaintiff's only hobbies are playing cards for an hour or two and seeing about her family.  (R. 211).  She walks for exercise.  (R. 212).  Her daily chores are sweeping and some cooking.  (R. 213).  She mostly sits and watches television or visits her sister.  (R. 214).  The ALJ told Plaintiff's attorney that if she saw a specialist before the decision was rendered he should get a copy of any records to the judge.  (R. 217).  The record would be left open for twenty days in order to submit any updated records from Dr. DePaz.  (R. 217).  The vocational expert testified that the past relevant work Plaintiff described was sedentary.   (R. 218).

**G.**    **DISCUSSION**

a) Past Relevant Work

The Court has read the case attached to the Commissioner's brief and finds it dispositive of Plaintiff's argument that the ALJ improperly relied upon the vocational expert to find her capable of performing her past relevant work.  See Hennes v. Commissioner, supra.  Further, upon review of the hearing transcript, the expert in this

case did not give the opinion as to whether Plaintiff *could* perform her past relevant work, he merely testified that the job requirements of her past relevant work, as set forth in the DOT, was at a sedentary level.  The ALJ relied upon physical capacity assessments in the record, as well as opinions of her treating physicians, to support his finding that she could perform at a sedentary level, and therefore, she could perform her past relevant work.  The regulations specifically provide for this type of analysis.  20 CFR §1560 (b)(2).  Thus, there is no merit to this argument.

b) Credibility Determination

The ALJ has the discretion to make credibility determinations about a Plaintiff's allegations of pain and may reject such allegations if he or she articulates specific reasons for questioning the Plaintiff's credibility.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Wilson v. Heckler, 734 F.2d 513 (11th Cir. 1984).  In the present case, two treating physicians were of the opinion that Plaintiff could perform sedentary work even with the pain associated with her left knee surgery.  The ALJ found that their opinions and her own reported daily activities supported a finding that she could work at a job which allowed her to sit most of the day and stand as needed.  Plaintiff reported that she sat and played cards, and sat and watched television, and was able to walk for exercise.  These activities would not preclude working at a sedentary job like her past relevant work, which she herself described as requiring no lifting and she was able to sit all day or stand when necessary.  Thus, there is no merit to this claim either.

c) Development of  the Record

An ALJ has a clear duty to fully and fairly develop the administrative record.

Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).  In all such cases, there must be a

showing of prejudice before remand is warranted for further development.  Brown, 44

F.3d at 935; Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).  Prejudice has

been found when the record has "evidentiary gaps which result in unfairness or 'clear

prejudice.'" Brown, 44 F.3d at 935, *quoting* Ware v. Schweiker, 651 F.2d 408 (5th Cir.

Unit A July 1981), cert. denied 455 U.S. 912.  An ALJ is not required to order medical

evidence to have a complete record unless the record establishes that it is necessary to

enable the ALJ to render his decision.  Holladay v. Bowen, 848 F.2d 1206 (11th Cir.

1988)(concerning the ordering of a consultative examination; Kelly, 761 F.2d at 1540

(concerning additional medical information submitted by the claimant).

In the present case, the ALJ had the records of Plaintiff's treating physicians

spanning several years.  The last medical record was June 2003 (one month prior to the

hearing), and when Plaintiff indicated ongoing treatment and possible future surgery,

the ALJ told her attorney to get the updated records and advise the ALJ if she saw the

specialist before his decision was rendered.  There were no additional records

submitted nor any request to delay the decision based on surgery or other treatment

even though the ALJ's decision was not rendered until several months later in October

2003.  Plaintiff does not argue in her brief that additional surgery took place or that

updated records were available or any other type of prejudice resulting from an

undeveloped record.  There are no evidentiary gaps in the record, Drs. Blake and

DePaz were treating Plaintiff for her knee problems, and Dr. Huey was treating her for high blood pressure and diabetes.  The complete records of these three treating sources are in the file.  Thus, there was no need for a consultative examination as the present record provided substantial evidence of all of Plaintiff's alleged conditions.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED.**

At Gainesville, Florida, this 13th day of February, 2006.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**